UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LARRY A. PULLUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:14-cv-1233 |
| v. | ) | Judge Sharp |
| | ) | Magistrate Judge Bryant |
| DAVID ELOLA, et al., | ) | **Jury Demand** |
| | ) | |
| Defendants. | ) | |

To: The Honorable Kevin H. Sharp, Chief United States District Judge

## REPORT AND RECOMMENDATION

Defendants Elola, Jinkins, Miller, Neumeyer, and Young have filed a Motion for

Summary Judgment. (Docket Entry 80). For the following reasons, the Magistrate Judge

**RECOMMENDS** that the Defendants' Motion for Summary Judgment (Docket Entry 80) be

**GRANTED** and that the claims against these Defendants be **DISMISSED WITH**

**PREJUDICE**.

### I.        Procedural History

The Plaintiff proceeds *pro se* and *in forma pauperis*. (Docket Entry 10). On May 28,

2014, the Plaintiff filed a Complaint, alleging that a number of individuals had violated his

constitutional rights while he was an inmate in the Dickson County Jail (the "Jail"). (Docket

Entry 1). He originally named the following Defendants: Elola, Young, Felts, Alberd, Miller,

Lindsey, Molner, Bledsoe, Holt, the Honorable Judge Burch, Granderson,[1] Lankford, Jinkins,

Neumeyer, the Dickson County Sheriff's Office, Dickson County, the Jail, and Southern Health

Partners, Inc. ("SHP"). (Docket Entries 1 and 9).

---

[1] Officer Granderson has been referred to as "Grongerson" in several filings. Similarly, Mr. Lankford was referred
to as "Lenford."

On July 24, 2014, the District Judge reviewed the Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). (Docket Entries 9 and 10). While the Plaintiff had stated viable claims under 42 U.S.C. § 1983 against Defendants Elola, Young, Felts, Alberd, Miller, Lindsey, SHP, Molner, Granderson, Jinkins, and Neumeyer, the Plaintiff's claims against Defendants Burch, Holt, Bledsoe, Lankford, the Dickson County Sherriff's Office, Dickson County, and the Jail were dismissed with prejudice. (Docket Entries 9 and 10).

The Plaintiff subsequently filed a Motion on August 8, 2014, requesting that Defendants Alberd, Lindsey, and Granderson be classified as witnesses, not as defendants. (Docket Entry 13). This Motion was construed as a Motion for Voluntary Dismissal of the three Defendants and was granted. (Docket Entry 100).

Also filed on August 8, 2014, were a Memorandum and Motion in response to the findings and conclusions made by the District Judge on initial review. (Docket Entries 14 and 15). The relief sought by the Plaintiff in the Memorandum and Motion was denied, and the actions taken by the District Judge on initial review remained unchanged. (Docket Entry 101).

On October 29, 2014, Defendants Felts, Alberd, Lindsey, and Granderson filed a Motion to Dismiss because the Plaintiff had not asserted any claims against them. (Docket Entry 48). The Plaintiff had earlier stated that he did not object to dismissing the claims against these Defendants. (Docket Entry 46, p. 1). The Motion to Dismiss was granted. (Docket Entry 112).

The Plaintiff later moved to amend his Complaint to add an unnamed Defendant (Docket Entry 54) and to demand monetary relief from the present Defendants (Docket Entry 55). The Magistrate Judge granted the Plaintiff's request to assert monetary demands against the Defendants (Docket Entry 98) and denied the Plaintiff's request to add an unnamed Defendant to the action (Docket Entry 116).

Defendants Molnar and SHP filed a Motion for Summary Judgment (Docket Entry 78) on March 11, 2015 and a Motion to Strike and Objection to Plaintiff's Response to Motion for Summary Judgment (Docket Entry 95) on April 20, 2015. The Magistrate Judge filed a Report and Recommendation addressing both motions on February 18, 2016. (Docket Entry 133).

The remaining Defendants, Elola, Jinkins, Miller, Neumeyer, and Young, also filed a Motion for Summary Judgment on March 11, 2015. (Docket Entry 80). The Plaintiff filed a Response on April 13, 2015 (Docket Entry 94), and the Defendants filed a Reply on April 21, 2015 (Docket Entry 97). The Defendants' Motion for Summary Judgment is properly before the Court.

## II.     Statement of Facts[2]

The Plaintiff was transferred from the Davidson County Jail to the Jail on March 7, 2014. (Docket Entry 94, p. 20). During transport, the Plaintiff was attired in male clothing. (Docket Entry 94, p. 21). The clothing the Plaintiff was wearing at the time of his arrest was sent to the Jail with him. (Docket Entry 94, p. 21). Among the Plaintiff's personal belongings were pink dress shoes, a dress, a bra, shower shoes, and hygienic products. (Docket Entry 94, p. 21). While the Plaintiff was being booked, his personal belongings were individually inspected by one or more officers. It is possible that the Plaintiff's personal belongings were briefly visible to several inmates. Once the Plaintiff completed the booking process, he was placed in Pod D-30, a classification pod. (Docket Entry 94, p. 22). He was later moved to the general population A-pod on March 13, 2014. (Docket Entry 94, p. 22). Within minutes of being placed in A-pod, the Plaintiff pressed the call button and requested to be removed. (Docket Entry 94, p. 22). The Plaintiff was moved back to Pod D-30. (Docket Entry 94, p. 23).

---

[2] As is later addressed, the Defendants' Statement of Undisputed Material Facts (Docket Entry 82) is generally treated as undisputed for purposes of the Defendants' Motion for Summary Judgment. *See* Local Rule 56.01(c), (g).

The Plaintiff filed a grievance on March 13, 2014, complaining that Defendant Elola had improperly displayed the Plaintiff's female clothing while conducting inventory during the Plaintiff's intake. (Docket Entry 1, p. 6-7). According to the Plaintiff, once he was moved to the general population, inmates approached him, asking if he was the inmate with female clothing and threatening him. (Docket Entry 1, p. 7). In his grievance, he stated that he wished to file sexual harassment charges against Defendant Elola and requested an attorney, a phone call, a copy of the grievance form, and mental health counseling. (Docket Entry 1, p. 7). Defendant Young investigated the alleged incidents and concluded that the Plaintiff's complaints of harassment and abuse were unsubstantiated. (Docket Entry 94, p. 23). Instead of providing a written response to the Plaintiff's grievance, Defendant Young met with the Plaintiff and verbally summarized his findings. (Docket Entry 94, p. 23). Defendant Young offered to keep the Plaintiff in in the classification pod if the Plaintiff felt safer there. (Docket Entry 94, p. 23). The Plaintiff agreed, but upon later realizing that the pod was used for reclassifying inmates, the Plaintiff stated he was uncomfortable being positioned in the pod. (Docket Entry 94, p. 137-138). In the "Reply" section of the Plaintiff's grievance form, Defendant Young stated "Situation resolved file only. Do not return to inmate." (Docket Entry 94, p. 125).

On March 23, 2014, the Plaintiff filed a grievance appeal, complaining that he had not received a written response to his March 13, 2014 grievance, he felt vulnerable to physical and mental harm in the classification pod, and he had not received the mental health counseling requested. (Docket Entry 94, p. 137). Defendant Young replied to the appeal on March 27, 2014, stating "I will look into this matter." (Docket Entry 94, p. 137).

In March 2014, Defendant Miller noticed that a young and inexperienced inmate in the Plaintiff's pod was continuously requesting personal items and believed that the inmates in the

Plaintiff's pod were using the young inmate to make these improper requests. (Docket Entry 94, p. 28). Defendant Miller visited the pod, asked the young inmate if he was alright, and told the other inmates to leave the young inmate alone. (Docket Entry 94, p. 28). Defendant Miller states that he did not directly speak with the Plaintiff during this incident and did not insinuate that the Plaintiff was sexually harassing the young inmate. (Docket Entry 94, p. 29).

The Plaintiff filed another grievance on April 14, 2014, stating that the inmates in his pod remarked about the booking incident and told other inmates about the incident. (Docket Entry 94, p. 138). The Plaintiff again stated that he felt vulnerable to physical and mental harm. (Docket Entry 94, p. 138). Defendant Young's reply to this grievance states "Spoke w/ inmate Situation resolved." (Docket Entry 94, p. 138).

Later, on April 27, 2014, the Plaintiff was involved in a physical altercation with another inmate, Kyle Lankford. (Docket Entry 94, p. 24). Before the event, Defendants Jinkins and Neumeyer were in the Plaintiff's pod to distribute medication. (Docket Entry 94, p. 25). The Plaintiff approached Defendant Jinkins and stated "you need to do something about him." (Docket Entry 94, p. 25). When Defendant Jinkins asked to whom the Plaintiff was referring, the Plaintiff did not give a name, rather referring to the individual as "the new kid." (Docket Entry 94, p. 25). Defendant Jinkins assumed the Plaintiff was referring to Mr. Lankford who had arrived in the Plaintiff's pod that same day. (Docket Entry 94, p. 25). When Defendant Jinkins asked the Plaintiff if he had been threatened, the Plaintiff said "no, but he needs to go." (Docket Entry 94, p. 25). Defendant Neumeyer then asked the pod if there were any problems, to which the inmates responded, "everything is cool." (Docket Entry 94, p. 26). At that time, the Plaintiff had not informed Defendants Jinkins and Neumeyer of his gender identity disorder. (Docket Entry 94, p. 26). Defendants Jinkins and Neumeyer then continued to distribute medication.

(Docket Entry 94, p. 26). A fight between the Plaintiff and Mr. Lankford followed. The Defendants responded to the altercation and reported that the Plaintiff said the fight was over the pod television. (Docket Entry 94, p. 26). Following the altercation, the Plaintiff was transferred to a local hospital to treat his injuries. (Docket Entry 94, p. 24). According to an incident report, taken by Mr. Ronald Tilley, an officer at the Dickson County Sheriff's Office, the altercation between the Plaintiff and Mr. Lankford arose over a disagreement about the television in the pod. (Docket Entry 94, p. 140-141). In this report, the Plaintiff is referred to as the victim, and Mr. Lankford is referred to as the aggressor. (Docket Entry 94, p. 140). After an investigation and a disciplinary hearing on April 29, 2014, the Plaintiff was found guilty of fighting and was sentenced to seven days in segregation. (Docket Entry 94, p. 27, 139, 143). The Plaintiff appealed this finding. (Docket Entry 94, p. 143).

Once the Plaintiff returned from the hospital, he was placed in an individual cell until he was transferred to the Bledsoe County Correctional Complex on August 21, 2014. (Docket Entry 18) (Docket Entry 94, p. 17, 24). Currently, the Plaintiff is incarcerated at the South Central Correctional Center. (Docket Entry 28) (Docket Entry 94, p. 19).

While the Plaintiff was incarcerated at the Jail, Defendant Young was the Jail Administrator. (Docket Entry 94, p. 19). Lieutenant Felts is the current Jail Administrator. (Docket Entry 94, p. 19). Defendants Elola, Neumeyer, Jinkins, and Miller were Jail employees during the relevant time period. (Docket Entry 94, p. 18-19).

### III. Legal Conclusions

#### A. Summary Judgment Standard of Review

"Summary judgment should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *S.L. ex*

*rel. K.L. v. Pierce Twp. Bd. of Trustees*, 771 F.3d 956, 961 (6th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). The evidence is viewed in the light most favorable to the nonmoving party, and all reasonable inferences are drawn in favor of the nonmoving party. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Ultimately, the "question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne v. Novartis Pharm. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 251-52).

## IV. Analysis

### A. Preliminary Issues Raised in the Defendants' Reply

The Defendants raised two issues in their Reply (Docket Entry 97) which bear on the resolution of their Motion for Summary Judgment (Docket Entry 80). First, the Defendants argued that the Court should disregard certain evidence in the Plaintiff's Response to the Defendant's Motion for Summary Judgment (Docket Entry 94) because it is currently in an inadmissible form. (Docket Entry 97, p. 3-5). Defendants Molnar and SHP raised a similar objection which was addressed and rejected in the February 18, 2016 Report and Recommendation (Docket Entry 133). As was stated in the Report and Recommendation:

> As of December 1, 2010, the evidence submitted in support of, or in opposition to, a motion for summary judgment need not be submitted in an admissible form. Rather, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that **would be** admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). Once the objection has been raised, "[t]he burden is on the proponent to show that the **material is admissible as presented or to explain the admissible form that is anticipated**." Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment; *see also Franklin Am. Mortgage Co. v. Chicago Fin. Servs., Inc.*, No. 14-00753, 2015 WL 7015648, at *3 (M.D. Tenn. Nov. 10, 2015); *RyMed Techs., Inc. v. ICU Med., Inc.*, No. 3:10-01067, 2012 WL 4505896, at *5 (M.D. Tenn. Sept. 28, 2012); *Foreword Magazine, Inc.*

*v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011).

(Docket Entry 133, p. 6) (emphasis added). While the current Defendants referenced the 2010 Advisory Committee notes in their Reply, the Defendants' summary of the notes is cherry-picked. (Docket Entry 94, p. 4) ("The burden is on the proponent to show that the material is admissible as presented and the rule does not require a separate motion to strike"). While portions of the Plaintiff's Response could be admitted into evidence at trial, the Defendants have identified several problematic affidavits containing content that would likely not be admissible in any form. The affidavits were submitted by the Plaintiff's wife and daughter. (Docket Entry 94, p. 324-326). It does not appear that the affidavits were made on personal knowledge. These affidavits are not considered for purposes of the Defendants' Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(4).

The second issue raised in the Defendants' Reply has more merit. Like Defendants Molnar and SHP, these Defendants challenged the Plaintiff's responses to the Defendants' Statement of Undisputed Facts because many of the Plaintiff's responses do not contain citations to the record. (Docket Entry 97, p. 5-6). As was discussed in the February 18, 2016 Report and Recommendation (Docket Entry 133, p. 5), a party may dispute a fact in the opponent's statement of material facts, but the party must support his claim with a citation to the record. *See* Local Rule 56.01(c); *see also* Fed. R. Civ. P. 56(c). If the party fails to properly respond to another party's statement of material facts, the Court assumes that the facts are not disputed for purposes of summary judgment. Local Rule 56.01(g); *see also* Fed. R. Civ. P. 56(e)(2). While the Plaintiff supports several of his challenges to the Defendants' Statement of Undisputed Facts with citations to the record, the remaining statements are taken as undisputed for purposes of the Defendants' Motion for Summary Judgment.

## B. The Defendants' Motion for Summary Judgment

The Plaintiff's claims against the Defendants arise under 42 U.S.C. § 1983. To succeed on a § 1983 claim, the Plaintiff must establish that he was deprived of a constitutional or federal right, privilege, or immunity by a person acting under the color of state law. *Harris v. City of Circleville*, 583 F.3d 356, 364 (6th Cir. 2009).

Prisoners and pretrial detainees are protected from "cruel and unusual punishment" under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment, respectively. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013). Claims of deliberate indifference under the Eighth Amendment and the Fourteenth Amendment are analyzed in the same manner. *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) (citation omitted). The claim consists of an objective component and a subjective component. *Villegas*, 709 F.3d at 568 (citation omitted).

To satisfy the objective component, the plaintiff must show that he "faced a substantial risk of serious harm" to his health or safety of which today's society does not tolerate. *Id.* The subjective component is satisfied if the plaintiff shows that the state actor knew of the substantial risk of serious harm but chose to ignore it. *Id.* at 569 (citation omitted). The state actor must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

### 1. Claims Against the Defendants in an Official Capacity

The current Defendants were each sued in an official capacity and in an individual capacity. (Docket Entry 1, p. 40-43). "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."*Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky*, 473 U.S. at 166 (citing *Brandon*, 469 U.S. at 471-72).

During the time relevant to this lawsuit, the current Defendants worked at the Dickson County Jail. The Defendants first seek summary judgment on the Plaintiff's claims against them in an official capacity, because the Plaintiff's claims against Dickson County have already been dismissed with prejudice. (Docket Entry 81, p. 6). The Plaintiff acknowledges this, although he believes the dismissal of claims against Dickson County was in error. (Docket Entry 94, p. 35). As Dickson County was on notice of these claims, and the claims against Dickson County have been dismissed, the Magistrate Judge recommends that the claims against the current Defendants in their official capacities likewise be **DISMISSED WITH PREJUDICE**. *See* 28 U.S.C. § 1915(e)(2)(B).

### 2. Claims Against Defendant Elola in an Individual Capacity

The Plaintiff claims that during his intake at the Jail, Defendant Elola purposefully displayed the Plaintiff's female garments so that other inmates would see the garments and harass or assault the Plaintiff. (Docket Entry 1, p. 45). The Plaintiff claims he asked Defendant Elola not to reveal the female clothing in front of other inmates. (Docket Entry 1, p. 45). Defendant Elola declared that the Plaintiff stated the female clothing was part of his Halloween costume. (Docket Entry 84 ¶ 6). The Defendants have supplied the video surveillance recording of the Plaintiff's intake at the Jail. During the video, the Plaintiff's personal items are taken out of a bag and individually expected. To Defendant Elola's credit, the clothing is not swung around in an obtrusive manner. The Plaintiff complained about Defendant Elola's conduct in a

grievance filed on March 13, 2014. (Docket Entry 1, p. 6-7). The Plaintiff claims that once he

was transferred from the classification pod to general population, he was approached by other

inmates who asked if he was the inmate with female clothing and made sexual or harmful threats

to him. (Docket Entry1, p. 7). According to the Plaintiff, Defendant Elola's alleged actions

resulted in fear of attack and led to the Plaintiff's fight with Mr. Lankford in April 2014.

There is no question that prison and jail officials have a duty to protect inmates from

violence by other inmates. *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). "In the Sixth

Circuit, it is reasonable preventable assault, rather than any fear of assault, that gives rise to a

compensable Eighth Amendment claim." *Osborne v. Little*, No. CIV.A. 3:07-1290, 2008 WL

4057093, at *2 (M.D. Tenn. Aug. 29, 2008) (citing *Wilson*, 148 F.3d at 601); *see also Hill v.

Hickman Cty. Jail*, No. 1:15-CV-0071, 2015 WL 5009301, at *6 (M.D. Tenn. Aug. 21, 2015)

(dismissing § 1983 claim for sexual threats because "[a]lthough the plaintiff here claims that he

was threatened by another prisoner and that jail officials did not take his threats seriously, the

Complaint omits any reference to an actual sexual assault or physical injury resulting from the

prison officials' disregard of the reported threats"); *Collier v. Haywood Cty.*, No. 14-1324-JDT-

EGB, 2015 WL 1758075, at *8 (W.D. Tenn. Apr. 17, 2015); *Martin v. Lester*, No. 13-2750-JDT-

TMP, 2013 WL 5604309, at *5 (W.D. Tenn. Oct. 11, 2013).

As described above, the Plaintiff's fear of assault is not compensable. The only incident

of assault cited by the Plaintiff is the April 27, 2014 fight between the Plaintiff and Mr.

Lankford. This fight, however, does not give rise to a deliberate indifference claim against

Defendant Elola because the fight did not result from the booking incident. According to the

Jail's disciplinary report, the Plaintiff was found guilty of fighting and was sentenced to seven

days in segregation. (Docket Entry 94, p. 139). This was decided after reviewing the surveillance

video which captured the fight. (Docket Entry 94, p. 143). After the fight, the Plaintiff reported to Defendants Jinkins and Neumeyer that the dispute was about the television in the pod. (Docket Entry 94, p. 26). Officer Tilley from the Dickson County Sheriff's Office submitted an incident report in which both the Plaintiff and Mr. Lankford said the fight originated over the television. (Docket Entry 94, p. 140-141). None of the evidence put forth suggests that the fight occurred because of Defendant Elola's conduct during booking. This claim of deliberate indifference against Defendant Elola should be **DISMISSED WITH PREJUDICE**.

### 3. Claims Against Defendant Miller in an Individual Capacity

The Plaintiff's complaint against Defendant Miller arises from a verbal exchange between Defendant Miller and individuals in the Plaintiff's pod. In his Complaint, the Plaintiff alleged that Defendant Miller made a rude sexual remark to the Plaintiff in front of a young inmate, intimating that the Plaintiff was trying to sexually take advantage of the young inmate. (Docket Entry 1, p. 35, 53). During his deposition, the Plaintiff stated that Defendant Miller had "asked the kid pretty much in a round-about way had I tried to molest him while we was [sic] in there alone." (Docket Entry 90, p. 6). Defendant Miller declared that he visited the pod in response to the young inmate's repeated request for personal items, which he suspected was prompted by the older inmates. (Docket Entry 89 ¶ 4). Once there, Defendant Miller asked the young inmate if he was alright and if the older inmates had asked him to request the personal items. (Docket Entry 89 ¶ 4). He then told the other inmates to leave the young inmate alone and told the young inmate not to let the others take advantage of him by requesting personal items. (Docket Entry 89 ¶ 4).

As a matter of law, verbal harassment and verbal abuse do not meet the threshold of an Eighth Amendment violation. *Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009); *Johnson*

*v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (citing *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987)); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003). Even if the Plaintiff's version of events were true, Defendant Miller's statement would not give rise to an Eighth Amendment violation. This claim should be **DISMISSED WITH PREJUDICE**. *See* 28 U.S.C. § 1915(e)(2)(B).

### 4. Claims Against Defendant Young in an Individual Capacity

The Plaintiff has asserted a number of claims against Defendant Young, the former Jail Administrator. Though Defendant Young acted in a supervisory role as the Jail Administrator, liability under § 1983 does not attach on the basis of *respondeat superior*; proof of personal involvement is required. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). A supervisor's failure to act is insufficient to state a claim under § 1983. *Moniz v. Cox*, 512 F. App'x 495, 499 (6th Cir. 2013); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Liability will only attach to the individual's "active unconstitutional behavior." *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002); *see also Bright v. Thompson*, 467 F. App'x 462, 464 (6th Cir. 2012). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 542 (6th Cir. 2015) (quoting *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995)) (emphasis removed).

### a. Failure to Investigate

First, the Plaintiff alleged that Defendant Young did not effectively investigate and resolve the March 13, 2014 grievance regarding Defendant Elola's booking conduct. (Docket Entry 1, p. 45). The Plaintiff believes Defendant Young should have charged Defendant Elola

with a hate crime. (Docket Entry 1, p. 45). After receiving this grievance, Defendant Young initiated an investigation into the incident which included meeting with the Plaintiff, reviewing the booking room video, and meeting with Defendant Elola. (Docket Entry 86 ¶ 13). Upon completion of the investigation, Defendant Young met with the Plaintiff and related that his complaint was not substantiated. (Docket Entry 86 ¶ 13). According to the Plaintiff, Defendant Young said that Defendant Elola's conduct was "possibly insensitive." (Docket Entry 90, p. 2).

This claim against Defendant Young does not rise to the level of an Eighth Amendment violation. While it is undisputed that Defendant Young investigated the claims in the Plaintiff's grievance and personally met with the Plaintiff to discuss his conclusions, the Sixth Circuit has held that a supervisor's inadequate investigation, and even a supervisor's failure to act, do not trigger § 1983 liability. *See Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012); *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999); *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Additionally, as discussed above, Defendant Elola's conduct during the booking incident does not rise to the level of an Eighth Amendment violation. Defendant Young's response to this conduct could not, therefore, constitute approval of unconstitutional conduct. Moreover, the Plaintiff has not submitted evidence suggesting that Defendant Young participated in Defendant Elola's conduct or approved of the conduct. For these reasons, the Plaintiff's claim that Defendant Young ineffectively investigated and resolved the Plaintiff's grievance against Defendant Elola should be **DISMISSED WITH PREJUDICE**.

### b. Inadequate Response to Grievances

The Plaintiff further claimed that Defendant Young did not adequately address his grievances, believing Defendant Young should have given the Plaintiff an attorney, given the Plaintiff a job at the Jail, transferred the Plaintiff to prison, and ensured that the Plaintiff was

housed in the medical ward at the request of "Nurse Kay." (Docket Entry 1, p. 45-46) (Docket Entry 94, p. 76-77).

The District Judge has already dismissed the Plaintiff's complaint regarding the Defendants' alleged noncompliance with the Jail grievance procedure. (Docket Entry 9, p. 6). For the following reasons, the remaining claims should also be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Inmates do not have a constitutional right to have an appointed attorney in civil cases. *Bennett v. Smith*, 110 F. App'x 633, 635 (6th Cir. 2004); *Hook v. Comm'r of Soc. Sec.*, 97 F.3d 1451 (6th Cir. 1996); *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995). Likewise, inmates do not have a constitutional right to work at the prison or detention facility. *Dobbins v. Craycraft*, 423 F. App'x 550, 552 (6th Cir. 2011); *Davis v. Clinton*, 74 F. App'x 452, 455 (6th Cir. 2003) (citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). The Plaintiff's claim that he should have been transferred to prison and been housed in the Jail's medical ward also fails because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (citations omitted). Additionally, the Plaintiff's medical record does not appear to have any such housing request from a Nurse Kay. Nor is there any indication that Defendant Young was aware of a recommendation that the Plaintiff be housed in the medical ward. For the foregoing reasons, the Magistrate Judge recommends that the Plaintiff's claims that Defendant Young should have provided the Plaintiff with an attorney and job and transferred the Plaintiff to a prison or housed the Plaintiff in the medical ward be **DISMISSED WITH PREJUDICE**. *See* 28 U.S.C. § 1915(e)(2)(B).

### c. Failure to Protect

The Plaintiff contends that he was put in physical danger because Defendant Young did not put him in a safe pod. (Docket Entry 90, p. 8). This claim is based on the grievances submitted by the Plaintiff in March 2014 in which he voiced concern that Defendant Elola's booking conduct had put the Plaintiff's life in danger. (Docket Entry 1, p. 6-8). The Plaintiff's complaints do not name any specific would-be attackers; rather, the Plaintiff states he is afraid of every inmate who is moved to his pod. (Docket Entry 1, p. 6-8). During the Plaintiff's deposition, he acknowledged that after he filed the first grievance, Defendant Young met with the Plaintiff and the Plaintiff said he felt comfortable in the classification pod. (Docket Entry 90, p. 3-4). The Plaintiff did not provide Defendant Young with the names of any individuals who had allegedly threatened the Plaintiff. (Docket Entry 90, p. 5). After realizing that individuals would periodically be relocated to the classification pod, the Plaintiff filed a grievance appeal, stating that he feared for his safety and asking to be transferred to prison. (Docket Entry 1, p. 8).

"Although, [i]n the abstract, one prison inmate's threat to the health and safety of another inmate is 'sufficiently serious' to satisfy the objective component, a 'general concern' about safety from unidentified inmates does not satisfy this component." *Dugas v. Wittrup*, No. CV 2:15-CV-67, 2016 WL 109803, at *7 (S.D. Ohio Jan. 11, 2016) *report and recommendation adopted,* No. CV 2:15-CV-67, 2016 WL 413267 (S.D. Ohio Feb. 2, 2016) (internal quotations removed) (quoting *Williams v. McLemore*, 247 F. App'x 1, 9 (6th Cir. 2007)); *see also Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001). "[I]dentification of a prisoner's enemies is critical to the prison's ability to protect a prisoner because it is the prison officials, not the prisoner, who must determine whether there is a substantial risk of harm that warrants a transfer or other action." *Bogan v. Brunsman*, No. 1:11-CV-259, 2013 WL 360357, at *6 (S.D. Ohio Jan.

30, 2013) *report and recommendation adopted,* No. 1:11CV259, 2013 WL 754262 (S.D. Ohio Feb. 27, 2013). Alternatively, the objective component may be proven by establishing a pervasive risk of harm. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 815 (6th Cir. 1996); *Lyons v. Holden-Selby*, 729 F. Supp. 2d 914, 919 (E.D. Mich. 2010).

Because the Plaintiff failed to indicate which individuals had threatened him and failed to show that this risk of attack was pervasive within the Jail, the Plaintiff has not established the objective component of his failure to protect claim against Defendant Young. This claim should be **DISMISSED WITH PREJUDICE**.

### 5. Claims Against Defendants Jinkins and Neumeyer in an Individual Capacity

The Plaintiff next claims that Defendants Jinkins and Neumeyer were deliberately indifferent to his need to be separated from Mr. Lankford and failed to protect the Plaintiff from Mr. Lankford. This claim again goes back to the April 2014 incident in which the Plaintiff and Mr. Lankford were involved in a physical altercation regarding the television in the pod. Immediately before the fight broke out, Defendants Jinkins and Neumeyer had been in the Plaintiff's pod to distribute medicine. (Docket Entry 94, p. 25). The Plaintiff told Defendant Jinkins "you need to do something about him," referring to "the new kid." (Docket Entry 94, p. 25). Defendant Jinkins assumed that the Plaintiff was referring to Mr. Lankford. (Docket Entry 94, p. 25). However, the Plaintiff denied that he had been threatened by Mr. Lankford, and the other inmates in the pod agreed that there were no problems. (Docket Entry 94, p. 25-26). Satisfied, Defendants Jinkins and Neumeyer left the pod to continue distributing medication. (Docket Entry 94, p. 26). Shortly thereafter, the Plaintiff approached Mr. Lankford, and they began to fight. Defendants Jinkins and Neumeyer responded to the fight after it had concluded. After an investigation, the Plaintiff was found guilty of fighting. (Docket Entry 94, p. 139).

Similar to the claim against Defendant Young, the Plaintiff did not do enough to convey to the Defendants that he was facing a substantial risk of serious harm from Mr. Lankford. The Plaintiff denied that he had been threatened by Mr. Lankford. Other inmates in the pod agreed that there were no problems. Prior to the incident, the Defendants were not aware of the Plaintiff's gender identity disorder. The Plaintiff's statement to Defendant Jinkins, "you need to do something about him" does not suffice to put the Defendants on notice of a substantial risk of serious harm to the Plaintiff. The Plaintiff's claim against these Defendants for failing to protect him from Mr. Lankford should be **DISMISSED WITH PREJUDICE**.

**C.  Claims Not Addressed in the Defendants' Motion for Summary Judgment**

Though the Defendants moved for summary judgment on a majority of the Plaintiff's claims, several allegations remain. These allegations are now reviewed pursuant to 28 U.S.C. § 1915(e)(2) which states in part "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

**1.  Denial of Access to the Courts**

First, the Plaintiff complained that he was denied access to the Jail's law library. (Docket Entry 1, p. 46, 49-50). Liberally construed, this is a claim of interference with the inmate's constitutional right of access to the courts. It is well-established that an access-to-the-courts claim cannot survive absent an actual injury, such as "having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citations omitted); *see also Lewis v. Casey*, 518 U.S. 343, 349, 351 (1996); *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010).

No such injury has been alleged by the Plaintiff. While the Plaintiff complained that his lack of access to the courts prevented him from knowing which constitutional violations to allege, the Plaintiff's Complaint has been liberally construed, and the cognizable claims stemming from his Complaint have been identified and analyzed. Aside from this, the Plaintiff has not identified any specific prejudice arising from the alleged denial of access to a law library. The claim should be **DISMISSED WITH PREJUDICE**. *See* 28 U.S.C. § 1915(e)(2)(B).

### 2. Limited Access to Phone Calls

The Plaintiff complained that he was given limited access to phones, stating he was only given two phone calls per week "instead of 12 hours every day like other inmates." (Docket Entry 1, p. 51). Given the proper facts, this allegation could be cognizable under the First Amendment, *see Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994), and the Equal Protection Clause of the Fourteenth Amendment, *see Logan v. Corr. Corp. of Am.*, No. 1:12-CV-0003, 2012 WL 2131676, at *4 (M.D. Tenn. June 12, 2012). However, the Plaintiff fails to set forth specific allegations supporting these claims. He has not established how he was harmed, and he has not articulated how this alleged deprivation is connected to his membership in a protected class. The Plaintiff has also failed to explain the personal involvement of Defendant Elola in this claim. *See Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) ("It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by . . . each of the named defendants.") (citations omitted). This conclusory claim should be **DISMISSED WITH PREJUDICE**. *See* 28 U.S.C. § 1915(e)(2)(B).

### 3. Conditions of Confinement

Next, the Plaintiff complained about his living conditions in the Jail, stating that he was kept in a drunk cell with a concrete bed and was given limited access to showers, recreational

time, and television. (Docket Entry 1, p. 51-52). In particular, he claimed he was taken outside once every four weeks, and had not been given a shower for eight days. (Docket Entry 1, p. 51). The Plaintiff additionally complained that he had not seen daylight or darkness in twenty-three days and had been on continuous lockdown. (Docket Entry 1, p. 52). The Plaintiff stated, "Mentally I'm empty." (Docket Entry 1, p. 52). The only Defendant named is Defendant Elola, although Defendant Elola's role in these claims is unclear. (Docket Entry 1, p. 51).

As the Plaintiff has been transferred to South Central Correctional Center, any declaratory or injunctive relief sought is moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010). Only monetary claims survive for which the Plaintiff must show he suffered a "physical injury or the commission of a sexual act" in connection with the alleged conditions of confinement. 42 U.S.C. § 1997e(e); *see Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) ("We have indicated that even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward.") (collecting cases); *Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Knauer v. Fackler*, No. 3:10CV-P415-H, 2010 WL 5055775, at *2 (W.D. Ky. Dec. 3, 2010) ("Since Plaintiff alleges no physical injury in connection with the strip search, Plaintiff's claim related to the strip search will be dismissed for failure to state a claim upon which relief could be granted.").

The Plaintiff has not alleged or established that he suffered a physical injury or the commission of a sexual act in connection with these alleged conditions of confinement. On this basis, the Plaintiff's claim related to these conditions of confinement should be **DISMISSED WITH PREJUDICE**. *See* 28 U.S.C. § 1915(e)(2)(B).

### 4. Placement in Segregation

Additionally, the Plaintiff's complaint about being on continuous lockdown for twenty-three days may be construed as a claim under the Fourteenth Amendment Due Process Clause. This claim also fails as a matter of law. To succeed on this claim, the Plaintiff would need to establish that this segregation "impose[d] an 'atypical and significant' hardship [on the Plaintiff] 'in relation to the ordinary incidents of prison life.'" *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (quoting *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The length of the inmate's placement in segregation is highly relevant to this inquiry. *Harden-Bey*, 524 F.3d at 793. In *Sandin v. Conner*, the inmate's placement in segregation for thirty days did not meet this standard. *Sandin*, 515 U.S. at 486. Sixty-one days in administrative segregation also failed this standard. *Joseph*, 410 F. App'x at, 868. An indefinite placement in segregation may give rise to a cognizable liberty interest. *Harden-Bey*, 524 F.3d at 793.

Other than claiming to have been on lockdown for twenty-three days, the Plaintiff has not alleged facts indicating that this form of confinement imposed "an atypical and significant hardship" on the Plaintiff "in relation to the ordinary incidents of prison life." *See Park v. Morgan*, No. 1:15-CV-182, 2015 WL 1637168, at *4 (S.D. Ohio Apr. 10, 2015) *report and recommendation adopted,* No. 1:15CV182, 2015 WL 3904596 (S.D. Ohio June 25, 2015) (collecting cases). Further, as the Plaintiff has been transferred to another facility, there is no concern about an indefinite placement in segregation. *See Harden-Bey*, 524 F.3d at 793. Any due process claim arising out of the Plaintiff's placement in a segregated living environment should be **DISMISSED WITH PREJUDICE**. *See* 28 U.S.C. § 1915(e)(2)(B).

### 5. Prison Rape Elimination Act

The Plaintiff claims that his rights under the Prison Rape Elimination Act (the "PREA")
have been violated. (Docket Entry 1, p. 46). "[T]he PREA creates no private right of action."
*Hill*, No. 1:15-CV-0071, 2015 WL 5009301, at *3. As such, this claim should be **DISMISSED
WITH PREJUDICE**. *See* 28 U.S.C. § 1915(e)(2)(B).

### 6. The Privacy Act

The Plaintiff alleges that Defendant Elola's conduct during booking, holding the
Plaintiff's female clothing in potential view of inmates, violated the Privacy Act of 1974, 5
U.S.C. § 552a. This Act, however, only applies to federal government agencies. 5 U.S.C. §
552(f)(1); 5 U.S.C. § 552a(a)(1); *Schmitt v. City of Detroit*, 395 F.3d 327, 328-31 (6th Cir.
2005). During the relevant time period, Defendant Elola was an employee of a county jail. The
Plaintiff's claim against Defendant Elola under the Privacy Act should be **DISMISSED WITH
PREJUDICE**. *See* 28 U.S.C. § 1915(e)(2)(B).

### 7. Informational Privacy

The Plaintiff's Complaint, and particularly his claim that Defendant Elola violated the
Privacy Act, is construed to allege that Defendant Elola's conduct during booking violated the
Plaintiff's Fourteenth Amendment informational privacy rights. The Substantive Due Process
Clause of the Fourteenth Amendment protects against disclosure of certain personal matters,
such as "(1) where the release of personal information could lead to bodily harm . . ., and (2)
where the information released was of a sexual, personal, and humiliating nature." *Lambert v.
Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (internal citations omitted).

For example, the Second Circuit has explained that an inmate has a protected interest in
keeping his transsexualism confidential, first because the information is very private and

intimate, and second because the information may expose the inmate to hostility, intolerance, and discrimination from others. *Powell v. Schriver*, 175 F.3d 107, 111-12 (2d Cir. 1999). In *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998), the Sixth Circuit determined that "[o]ur sexuality and choices about sex, in turn, are interests of an intimate nature which define significant portions of our personhood" and concluded for purposes of that case that "the right to prevent the dissemination of confidential and intimate details of a rape implicates a fundamental right." *Bloch*, 156 F.3d at 685-86. Previously, this Court permitted an inmate's claim that his sexual orientation was disclosed to inmates by a correctional officer to proceed past initial review. *Hill v. Quezerque*, No. 3:14-CV-01756, 2014 WL 4385937, at *3 (M.D. Tenn. Sept. 5, 2014).

Once a fundamental right has been implicated, the court must balance the individual's interest in keeping the information private against the government's interest in disclosing the information. *Bloch*, 156 F.3d at 686 (6th Cir. 1998) (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1064 (6th Cir. 1998)).

The Plaintiff's claim that Defendant Elola displayed the Plaintiff's female garments in view of other inmates states a cognizable informational privacy violation. As a result of this conduct, the Plaintiff alleges, his propensity to wear women's clothing was made known to other inmates which not only put him at risk of physical harm but also revealed intimately private details about the Plaintiff's lifestyle. It is certainly understandable that the Jail has an interest in inventorying a new inmate's belongings. What is not evident, however, is whether the government had a legitimate interest in conducting the inventory procedure in view of other inmates. For purposes of 28 U.S.C. § 1915(e)(2)(B), the Plaintiff has stated a cognizable claim.

### D. Qualified Immunity

The Defendants have moved for qualified immunity on the claims brought against them in their individual capacities. The burden of establishing that the defendant is not entitled to qualified immunity rests with the plaintiff. *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 478 (6th Cir. 2014) (citation omitted). A two-step analysis is applied to decide claims of qualified immunity: first, the court determines if the plaintiff has shown a violation of his constitutional rights; second, the court must determine whether the right of "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The law is clearly established when the plaintiff can point either to 'cases of controlling authority in his jurisdiction at the time of the incident,' or 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *Kent v. Oakland Cty.*, 810 F.3d 384, 395 (6th Cir. 2016) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). If the constitutional right was not clearly established at the time of the defendant's action, or if the defendant did not violate the plaintiff's constitutional rights, the official is protected from suit by qualified immunity. *Pearson*, 555 U.S. at 232 (citation omitted).

With respect to all but the informational privacy claim, the Plaintiff has failed to establish that the Defendants violated his constitutional rights. Accordingly, the Magistrate Judge recommends that the current Defendants be granted qualified immunity regarding these particular claims.

As to the informational privacy claim, the Plaintiff has not met his burden to avoid qualified immunity. At the time of the booking incident, the contours of this right were not so well-established that Defendant Elola should have been aware that his conduct was unlawful. Case law from this Circuit makes clear that detailed information about an individual's rape is protected from disclosure absent a strong government need. *See Bloch*, 156 F.3d at 685-86. The Plaintiff's gender identity disorder is not, however, the type of personal sexual information identified in *Bloch*. Other Circuits have concluded that an inmate has a right to keep his medical information private, subject to the prison's legitimate penological needs. *Doe v. Delie*, 257 F.3d 309, 323 (3d Cir. 2001); *Powell*, 175 F.3d at 112. Defendant Elola did not, however, directly disclose the Plaintiff's gender identity disorder to other inmates. Upon finding no clear authority that a government official violates an inmate's privacy rights when displaying the inmate's opposite gender clothing to others during an inventory procedure, the Magistrate Judge recommends that Defendant Elola be granted qualified immunity and that the Plaintiff's informational privacy claim be **DISMISSED WITH PREJUDICE**.

## V.     Recommendation

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the Defendants' Motion for Summary Judgment (Docket Entry 80) be **GRANTED** and that the claims against these Defendants be **DISMISSED WITH PREJUDICE**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days, after being served with a copy of this Report and Recommendation to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of

receipt of this Report and Recommendation may constitute a waiver of further appeal. 28 U.S.C.

§ 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912

(6th Cir. 2004).

      **ENTERED** this 25th day of February, 2016.

                    /s/ John S. Bryant
                    JOHN S. BRYANT
                    United States Magistrate Judge